```
                UNITED STATES DISTRICT COURT
                   DISTRICT OF MINNESOTA
                    08-CV-653(JMR/FLN)
```

John L. Simpson              )
                             )
     v.                      )         ORDER
                             )
Sodexho Operations, LLC      )

Defendant moves for summary judgment on plaintiff's discrimination and defamation claims. Plaintiff does not oppose dismissal of his state and federal discrimination claims, and they are hereby dismissed.

Plaintiff's remaining claims are for defamation. As to these claims, summary judgment is granted.

I. Background

The facts are taken in the light most favorable to plaintiff. Defendant provides food services to institutional and corporate clients. Plaintiff worked for defendant as an executive chef, most recently at the Wells Fargo Home Mortgage campus in Minneapolis. Defendant's office at that location had video surveillance, recording equipment, and a safe.

On April 16, 2007, money was missing from the safe. Defendant determined the amount of the loss and reported it to the police. Employees who had opened the safe submitted statements. A review of the video surveillance showed plaintiff entering the office shortly before the theft was discovered. He stayed for a short time and then left, carrying something in his hand.

The next day, a staff member found an unmarked box of cash in a supply room. He brought the box to plaintiff. Plaintiff told him the box was his, and that he would take care of it. Later that day, a second surveillance video showed plaintiff carrying an envelope to his car during the lunch rush.

Meanwhile, the employee who had discovered the box of cash contacted plaintiff's manager, who was investigating the theft. He told the manager about the box, and about plaintiff's reaction. The manager instructed the employee to make a written statement. The following day, that same employee had a subsequent conversation with plaintiff, wherein plaintiff stated he wanted to buy a handgun. The employee felt threatened by these remarks.

The comment about plaintiff's wish for a firearm was brought to the attention of Steven Strange, Director of Human Resources. Strange was concerned plaintiff might present a safety risk, and authorized Michael Duwe, a Vice President of Corporate Security, to suspend plaintiff.

Shortly thereafter, Duwe hired Dale Mueller, an outside investigator, to complete the theft investigation. Duwe told Mueller that "there is money missing, and they got him on tape, but there's been other problems up there" and "they're all afraid of him." (Mueller Dep. at 36-37.) Duwe gave Mueller authority to "go up to Minneapolis and suspend this guy," meaning plaintiff. Two days later, on April 20, Mueller visited the Wells Fargo campus.

2

He reviewed several employee files and written statements, a timeline of events prepared by the general manager, and the video surveillance images.

Mueller interviewed several employees, including plaintiff. During plaintiff's interview, Mueller asked him about the video showing him leaving the office with something in his hand. Plaintiff admitted being in the office, but claimed he had a towel in his left hand and keys in his right hand. Mueller then asked about the box of money found in the storeroom. Plaintiff explained he routinely used the box to store valuables, but had inadvertently left it in the storeroom after changing his clothes. A search of plaintiff's desk revealed a cardboard box containing money and a wallet. The employee who found the box in the storeroom later confirmed this was not the box he had seen.

Mueller did not believe plaintiff. After the interview, plaintiff was suspended. Mueller then reported to Strange, first orally and later in writing, that he believed plaintiff committed the theft. After receiving the written report, Strange conferred with others and decided to terminate plaintiff's employment. Strange called plaintiff on the afternoon of April 27, 2007, and told him he was being fired because of his "reaction the day that the money was missing" and "because of the tapes." (Simpson Dep. at 172-73.) Plaintiff recalled being told he was being fired "because there was suspicion of me robbing the place." (Simpson

3

Dep. at 173, 182-83.)

After his termination, plaintiff claims he applied for positions at thirteen different food service companies. He does not recall exactly what he wrote on the applications, and has no documentary evidence supporting his claim. (Simpson Dep. at 185, 190-216.) He does not recall receiving any follow-up from prospective employers. (Simpson Dep. at 186-187.)

Plaintiff states that, on three occasions, he told the interviewer he was fired from his prior job for theft. He recalls only the first name of two of these interviewers. (Simpson Dep. at 190-216).

On February 18, 2008, plaintiff filed this action in state court; defendant removed it to this Court on March 10, 2008.

Defendant now moves for summary judgment.

II. Analysis

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 246 (1986). The party opposing summary judgment may not rest upon the allegations set forth in its pleadings, but must produce significant probative evidence demonstrating a genuine issue for trial. See Anderson, 477 U.S. at 248-49.

A defamatory statement must be made to someone other than the plaintiff, must be false, and must tend to harm the plaintiff's reputation in the estimation of the community. Stuempges v. Parke, Davis & Co., 297 N.W.2d 252, 255 (Minn. 1980). The statement's maker is not, however, liable if the statement is subject to a qualified privilege. Minnesota recognizes a qualified privilege for statements made on a proper occasion, from a proper motive, which are based on reasonable or probable cause. Id. at 256-57.

In this case, plaintiff claims three statements are defamatory. The first two are statements made by Mr. Duwe to Mr. Mueller. Plaintiff claims Duwe's statement to Mueller that he should "go up to Minneapolis and suspend" plaintiff is defamatory. Plaintiff next claims Duwe's statement to Mueller that "they're all afraid of" plaintiff is also defamatory. The third claimed statement was made by Mr. Strange, who told plaintiff he was being terminated for suspicion of theft. Solely for the purpose of this motion, the Court assumes these statements are capable of defamatory meaning, and therefore, potentially actionable. See Utecht v. Shopko Dep't Store, 324 N.W.2d 652, 653-54 (Minn. 1982). Even having made this assumption, however, the Court finds, as a matter of law, that each challenged statement is subject to Minnesota's qualified privilege.

The existence of a qualified privilege is a question of law

for the Court. Lewis v. Equitable Life Assur. Soc., 389 N.W.2d 876, 889 (Minn. 1986). Communications between an employer's agents in the "course of investigating or punishing employee misconduct" are subject to a qualified privilege. McBride v. Sears, Roebuck & Co., 235 N.W.2d 371, 374 (Minn. 1975). The qualified privilege also applies to statements to an employee about the reasons for his discharge. Lewis, 389 N.W.2d at 890.

Here, plaintiff argues there is a question of fact as to whether the statements are eligible for a qualified privilege, which must be determined by a jury. See Landers v. National R.R. Passenger Corp., 345 F.3d 669, 673 (8th Cir. 2003). Plaintiff is incorrect. There is no dispute about the words which were spoken, nor the context in which they were delivered. The first two statements were made by Duwe to Mueller - both agents of defendant - in the context of the theft investigation. The third was delivered to plaintiff in the context of his termination. Under McBride and Lewis, both are proper occasions, and there has been no suggestion of actual malice or improper motive.

Similarly, there is no question of fact requiring resolution by a jury as to whether the statements were made with reasonable or probable cause. Plaintiff suggests Mueller's investigation was inadequate, urging a comparison with the case of Wirig v. Kinney Shoe Corp., 461 N.W.2d 374, 380-81 (Minn. 1990). The comparison is inapt. In Wirig, the employer made no meaningful investigation of

6

a theft before accusing an employee at a group meeting. Id. The only witness who claimed to have personal knowledge of the theft had a history of sexually harassing the accused employee; the other witnesses' testimony was hearsay, which the employer did not verify. Id. at 380. The employer made no attempt to personally question the accused employee before the meeting. Id. The Minnesota Supreme Court found the employer lacked reasonable cause to accuse the employee of theft. Id. at 380-81.

Such inadequacies are not at all present in this case. Here, the statements were made after thorough investigation. The first two statements by Duwe were made based on his conversation with Strange. Strange knew of the problematic videos showing plaintiff's entry into the office, and his removing an object from it shortly before the theft was reported. He knew of the employee who reported finding a box of cash. He knew plaintiff had left the workplace and headed toward his car with an envelope during the lunch rush. He knew that the employee who found the box of cash reported a conversation with plaintiff the following day concerning a gun purchase. He knew the employee reported feeling threatened by this conversation. Strange delegated to Duwe the authority to suspend plaintiff, in part because he considered plaintiff to be a security risk. Duwe's direction to Mueller to "go up to Minneapolis and suspend" plaintiff, and the statement that other employees were "afraid" of plaintiff, were based on the information

7

he had learned from Strange.

Similarly, Strange's statement about plaintiff being terminated on suspicion of theft was also made upon reasonable and probable cause. Strange relied on the investigation. Unlike the perfunctory investigation at issue in <u>Wirig</u>, the investigator here personally interviewed several employees, including plaintiff, and reviewed corroborating evidence. Plaintiff's explanations were seriously considered but ultimately found not to be credible. Defendant was entitled to rely on the investigation, and statements reflecting the investigation's findings are based on reasonable and probable cause.

The Court finds this investigation sufficient to give a reasonable employer a basis to determine it had a perfidious employee, and to allow the employer to terminate him. The law, in this context, does not require court-admissible proof to a test of beyond a reasonable doubt. All allegedly defamatory statements were based on reasonable and probable cause, and therefore, subject to a qualified privilege.

A qualified privilege may be defeated by evidence of actual malice. <u>Lewis</u>, 389 N.W.2d at 889. Here, however, plaintiff admits he has no such evidence. Therefore, the statements are protected by the privilege, and are not defamatory.

Finally, the Court turns to plaintiff's claims of compelled self-published defamation. The "general rule" is that "the

communication of a defamatory statement to a third person by the person defamed is not actionable." Lewis, 389 N.W.2d at 886. However, Minnesota recognizes a "narrow exception" known as the doctrine of compelled self-publication. Id. Where the defamed person is compelled to communicate the defamatory statement to a third party, and where it is foreseeable to the defendant that the defamed person would be required to do so, the defendant may be liable. Id. at 886, 888.

Plaintiff claims he was compelled to tell prospective employers of the reason for his termination, thereby publishing Strange's statements to third parties. This claim must fail.

As already discussed, Strange's statement to plaintiff was not defamatory because it is subject to a qualified privilege. Even if it were, plaintiff has not come forward with evidence which would allow a jury to conclude that he was compelled to repeat the statements to prospective employers. He claims he submitted thirteen applications for employment, but does not recall what statements he made in those applications. He claims he told three interviewers that he was fired from his prior job for theft, but recalls only the first name of two of the interviewers. There is simply insufficient evidence, even if believed, for a jury to find that plaintiff was compelled to publish the statements.

The Minnesota Supreme Court affirmed summary judgment in a case where, as here, the plaintiff's sole evidence of compelled

self-publication was his deposition testimony and a list of companies where he interviewed. Rouse v. Dunkley & Bennett, P.A., 520 N.W.2d 406, 411 (Minn. 1994). There, as here, the plaintiff's recollection of events was vague; "he could not provide names of interviewers nor provide any documentary evidence of having filled out applications, sent resumes or received rejections." Id. The Minnesota Supreme Court found no question of material fact on the element of publication. Id.

The Court finds there is no issue of material fact as to the element of publication. Accordingly, defendant is entitled to summary judgment on this claim.

III. Conclusion

Defendant's motion for summary judgment is granted; defendant's request for attorney's fees is denied.

IT IS SO ORDERED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: July 27, 2009

s/ James M. Rosenbaum
JAMES M. ROSENBAUM
United States District Judge